Kathryn **BERG** and Daniel Berg, etc., et al., Plaintiffs,

v.

**GLEN COVE CITY SCHOOL DISTRICT, Defendant.**

No. CV 93–5053.

United States District Court, E.D. New York.

June 1, 1994.

James R. Filenbaum, Suffern, NY, for plaintiffs.

Robert S. Sapir, Hempstead, NY, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Plaintiffs Kathryn and David Berg, individually and as guardians for their minor children, Emily and Sasha Berg, commenced this action against defendant Glen Cove City School District alleging that defendant violated plaintiffs' constitutionally protected rights of freedom of religion and equal protection of the law under the First and Fourteenth Amendments to the United States Constitution, and under 42 U.S.C. § 1983, by refusing

to grant plaintiffs an exception to the immunization requirements of New York Public Health Law § 2164, and prohibiting the infant plaintiffs from attending school in the Glen Cove City School District unless plaintiffs have their children immunized. Plaintiffs contend that the immunizations required by § 2164 are contrary to their genuine and sincere religious beliefs and that they are entitled to the benefit of the exemption set forth in § 2164(9).

Plaintiffs commenced this action on November 9, 1993, by filing their complaint with an order to show cause seeking a temporary restraining order and a preliminary injunction. This Court issued a temporary restraining order (the "TRO") the same day, and scheduled a hearing on plaintiffs' request for a preliminary injunction for December 2, 1993. At the December 2 hearing, this Court heard testimony from Kathryn and David Berg, on behalf of plaintiffs, and Rabbi Howard Jachter, on behalf of defendant. At the close of the hearing, this Court reserved decision pending receipt of medical and dental records for plaintiffs, and, upon the consent of the parties, directed that the TRO remain in effect pending the decision on the request for a preliminary injunction. For the reasons below, plaintiffs' request for a preliminary injunction is granted.

## I.  BACKGROUND

The facts as alleged in the complaint, and as adduced at the hearing, are summarized as follows: In or before April 1993, Kathryn and David Berg sought to enroll their five year old twin daughters, Emily and Sasha, in the Glen Cove City School District, and requested exemption from the immunization requirement of New York Public Health Law § 2164. This section requires that all children be immunized against certain communicable diseases before they enter school, *see* N.Y.Pub.Health Law § 2164(2) and (7),[1] but

---

1. Section 2164(2) and (7) provides:

    2.  Every person in parental relation to a child in this state shall have administered to such child an adequate dose or doses of an immunizing agent against poliomyelitis, mumps, measles, diphtheria, rubella and haemophilus influenzae type b (Hib), which meets standards approved by the United States public

health service for such biological products, and which is approved by the state department of health under such conditions as may be specified by the public health council.

    7.  (a) No principal, teacher, owner or person in charge of a school shall permit any child to be admitted to such school, or to attend such school, in excess of fourteen days,

provides an exemption to those persons who oppose immunization on religious grounds, *see* N.Y.Pub.Health Law § 2164(9).[2]

By letters dated April 28, 1993 and July 22, 1993, defendant, through Assistant Superintendent Michael S. Perricone ("Perricone"), sought information from plaintiffs to determine whether the requirements for exemption were satisfied. In particular, Perricone asked plaintiffs to identify the religion to which they claimed to belong and the tenets of that religion that would be violated by permitting immunization.

Plaintiffs responded to Perricone's request by summarizing their purported religious beliefs in a letter dated July 29, 1993. As alleged in paragraph 17 of the Complaint, the July 29 letter described plaintiffs' religious beliefs as follows:

> While we feel we are members of the Jewish Faith and we believe in God, we adhere to certain personal and sacred religious beliefs. Our beliefs are partly based on Torah and what we believe that God commands of us. We believe that God has endowed us with the energy of life. We believe that this special energy, directed by God, has constructed our cells, our tissues, and our organs with infinite intelligence and these interconnected systems function in perfect harmony when we follow nature's laws which are the Laws of God. We believe a lifestyle that is in accordance with the Laws of God creates healthy bodies and healthy minds. God is pure and we must strive to live our lives as purely as possible. Eating unpure substances or injecting substances unnaturally into our bloodstreams is in our opinion a violation of these laws. "Leviticus XI–XVI" discusses the Laws of Purity. The REGULATIONS therein are the means to achieving a healthy soul in a healthy body. Specifically Leviticus XI,44, states "For I am the Lord your God; sanctify youselves [sic] therefore, and be ye holy; for I am holy, neither shall ye defile yourselves with any manner of swarming thing that moveth upon the earth." Inoculations, in our opinion, are clearly a defilement and in direct violation of the Laws of God.

Complaint ¶ 17.

By letter dated August 24, 1993, defendant informed plaintiff that it found the July 29 letter's statement of religious beliefs "insufficient as to specificity for us to admit your children to school in the fall." By a second letter dated August 24, 1993, defendants stated that "further information" is needed to determine whether the exemption is applicable.

Shortly thereafter, plaintiffs retained counsel. To cooperate with defendant's request for further information, plaintiffs' lawyer agreed to an oral deposition of plaintiffs Kathryn and David Berg by defendant's lawyer. The parties further agreed that the infant plaintiffs could begin the 1993–1994 school year in September 1993, in kindergarten, at defendant's Gribben School.

The agreed upon depositions were held on September 13, 1993. Subsequently, by letter dated November 1, 1993, defendant's lawyer informed plaintiffs' lawyer that defendant had determined that Emily and Sasha would not be permitted to attend school without the necessary immunizations. Further, defendant advised plaintiffs that if plaintiffs did not submit proper certifications of immunizations to the school district on or before November 5, 1993, the infant plaintiffs would not be permitted to attend school after that date.

Plaintiffs thereafter filed their complaint in this action on November 9, 1993, ultimately seeking: (1) a declaratory judgment that

---

without the certificate provided for in subdivision five of this section or some other acceptable evidence of the child's immunization against poliomyelitis, mumps, measles, diphtheria, rubella and, where applicable, haemophilus influenzae type b (Hib).... *See* N.Y.Pub.Health Law § 2164(2) and (7) (McKinney 1993).

**2.** Section 2164(9) provides:

This section shall not apply to children whose parent, parents, or guardian hold genuine and sincere religious beliefs which are contrary to the practices herein required, and no certificate shall be required as a prerequisite to such children being admitted or received into school or attending school. *See* N.Y.Pub.Health Law § 2164(9) (McKinney 1993).

they are entitled to the exemption from immunizations provided in § 2164(9); (2) a permanent injunction preventing defendant from violating plaintiffs' constitutional rights; and (3) damages in the amount of $1 million for violation of their constitutional rights, together with costs and disbursements of this action, including reasonable attorney's fees pursuant to 42 U.S.C. § 1988. On that same day, plaintiff brought an order to show cause seeking a temporary restraining order and a preliminary injunction enjoining defendant from barring the infant plaintiffs from attending school during the pendency of this action. As noted above, this Court issued a TRO that same day, and held a hearing on plaintiffs' request for a preliminary injunction on December 2, 1993.

As noted above, at the December 2 hearing, this Court heard testimony from Kathryn and David Berg, on behalf of plaintiffs, and from Rabbi Howard Jachter, on behalf of defendant. At the close of the hearing, this Court reserved decision pending receipt of certain medical and dental records of plaintiffs. Upon the consent of the parties, the Court directed that the TRO remain in effect pending the decision on the request for a preliminary injunction. The Court eventually received all of the requested medical and dental records by May 1993, as well as the parties' further submissions concerning those records.

## II. DISCUSSION

■ In the Second Circuit, to obtain a preliminary injunction, the moving party must show: " '(a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of the hardships tipping decidedly toward the party requesting the preliminary relief.' " *Deeper Life Christian Fellowship, Inc. v. Board of Education,* 852 F.2d 676, 679 (2d Cir.1988) (quoting *Jackson Dairy, Inc. v. H.P. Hood & Sons,*

*Inc.,* 596 F.2d 70, 72 (2d Cir.1979) (per curiam)).

As for the second prong of this analysis, defendant, relying on *Abdul Wali v. Coughlin,* 754 F.2d 1015, 1026 (2d Cir.1985), argues that plaintiffs must show a "substantial" likelihood of success on the merits, not merely "likelihood of success on the merits," because the relief they seek by way of the preliminary injunction is "the same relief ultimately sought in the action herein." Affidavit of Robert E. Sapir, ¶ 18.[3] Defendant's argument is without merit. In *Abdul Wali,* the Second Circuit imposed this higher burden where the preliminary injunction plaintiffs sought was not merely to maintain the *status quo,* but for "substantially all of the relief they ultimately seek." 754 F.2d at 1025–26. This is not the case here. To grant the preliminary injunction will not afford plaintiffs substantially all the relief they seek on the merits. While a preliminary injunction would allow the infant plaintiffs to attend and remain in school without being immunized, plaintiffs will have to prevail on their request for a permanent injunction for the infant plaintiffs to continue thereafter in school without being immunized.

■ Defendant properly does not contend that plaintiffs cannot show irreparable harm. As the Supreme Court has stated: "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976); *see also Deeper Life,* 852 F.2d at 679. Accordingly, plaintiffs meet this requirement for a preliminary injunction.

■ Before a discussion of the merits, the Court notes that in *Sherr v. Northport–East Northport Union Free School Dist.,* 672 F.Supp. 81 (E.D.N.Y.1987), this Court declared that the predecessor of § 2164(9) violated both the establishment and free exercise clauses of the First Amendment. The earlier version of § 2164(9) required that the parent or guardian seeking the exception be

---

**3.** According to the *Abdul Wali* court, to show a "likelihood of success on the merits," plaintiff "need only make a showing that the probability of his prevailing is better than fifty percent." 754 F.2d at 1025. By contrast, to show a "sub-stantial likelihood of success on the merits," plaintiff must show that the "cause of action is considerably more likely to succeed than fail." *Id.* at 1026.

a "bona fide member of a recognized religious organization" whose doctrines oppose such immunizations. In response to this Court's *Sherr* decision, the New York legislature amended § 2164(9) to require that the parent or guardian "hold genuine and sincere religious beliefs which are contrary to the practices herein required." Because the statutory exception is for persons whose opposition to immunizations stems from *religious* beliefs, it does not extend to persons whose views are founded upon, for instance, "medical or purely moral considerations," *Sherr*, 672 F.Supp. at 92, "scientific and secular theories," or "philosophical and personal" beliefs. *Mason v. General Brown Cent. School Dist.*, 851 F.2d 47, 51–52 (2d Cir. 1988). Thus, this Court must first determine whether plaintiffs' purported beliefs are "religious." Only if they are, then this Court must determine whether those beliefs are genuinely and sincerely held. Moreover, the Court is mindful that attempts to ascertain the sincerity of claims of religious belief must be undertaken with extreme caution. *See International Society for Krishna Consciousness, Inc. v. Barber*, 650 F.2d 430, 441 (2d Cir.1981). In *Barber*, the Second Circuit observed:

> Sincerity analysis seeks to determine the subjective good faith of an adherent.... The goal, of course, is to protect only those beliefs which are held as a matter of conscience. Human nature being what it is, however, it is frequently difficult to separate this inquiry from a forbidden one involving the verity of the underlying belief.

650 F.2d at 441.

As for plaintiffs' beliefs, both Kathryn and David Berg testified that they consider themselves "Jewish," but that they do not fit within any recognized classification of Judaism; rather, they adhere to their own concept of being Jewish. Although defendant offered testimony from an expert in Jewish religion that there is nothing in the teachings of the Jewish religion that would proscribe immunization for children, plaintiffs maintained, nevertheless, that the basis for their opposition to immunization was their *own* interpretation of passages from certain Hebrew scripture,[4] and claimed to adhere strongly to those passages, as they interpreted them, for at least the past six years.

Based on this testimony and plaintiffs statement of their beliefs in the complaint, it appears that plaintiffs' will likely succeed on their claim that the beliefs they hold opposing immunization qualify as "religious."

As for plaintiffs' claim that their beliefs are genuinely and sincerely held, this Court's examination of certain medical and dental records substantiates plaintiffs' claim that for at least the last six years they have practiced those beliefs they contend are opposed to immunization in contexts other than immunization, for instance, in the receipt of prenatal, pediatric and dental care. Although it may seem odd that plaintiffs interpret certain tenets of the Jewish religion to prohibit immunization, while Jewish teaching, according to defendant's expert, imposes no such prohibition, and although these facts bear on determining whether plaintiffs' beliefs are genuine and sincere, plaintiffs have thus far sufficiently shown that they hold *their* beliefs genuinely and sincerely.

Based on the record presented thus far, this Court finds that plaintiffs have establish a likelihood of success on the merits of their claim that their opposition to the required immunizations is based on beliefs which qualify as "religious," and that they hold these beliefs both "genuinely" and "sincerely." Thus, plaintiffs have satisfied their burden for obtaining a preliminary injunction. Accordingly, defendant is enjoined during the

4. In this respect, for example, David Berg testified:

There is the Leviticus. There are several references to keeping the blood clean and pure in Leviticus of which I think vaccinations most certainly violate them.... It says that we shall not ingest any unclean and swarming things from the earth.... I think they were talking about food and any other impure substance which humans have acquired in the habit of ingesting into the body.... God tell us not to violate the sanctity of the human body, and that's good enough for me.... It's something we have prayed over and it truly resonates for us it is the wrong thing to do, because it would be against God's will. It would come between us and Him.
Tr. 19–20.

**656**

pendency of this action from barring the infant plaintiffs, Emily and Sasha Berg, from attending school without proper certificates of immunization.

### CONCLUSION

For the reasons above, plaintiffs' request for a preliminary injunction is granted. Accordingly, defendant is enjoined during the pendency of this action from barring the infant plaintiffs, Emily and Sasha Berg, from attending school without proper certificates of immunization.

SO ORDERED.